# Lessee of Joseph Glancey *against* Joseph Jones.

Sheriff cannot advertise lands for sale, nor proceed to sell, without a *venditioni exponas*, nor acknowledge his deed until the return day of the writ.

EJECTMENT for one equal undivided third part of 75½ acres of land in Newberry township.

The plaintiff claimed under a warrant and survey to William Baxter, one third part whereof became vested in Thomas Armor. A judgment was obtained against him in April term 1784, and on a *fieri-facias* returnable to July term following, the premises in question, with other lands, were levied upon, and an inquisition held thereon and condemned. A *venditioni exponas* afterwards issued thereupon on the 29th January 1785, returnable to April term 1785. The deed from William Bailey, sheriff, to John Brookes, was dated 8th February 1785, and acknowledged at an adjourned Court of Common Pleas on the same day. It recited the judgment, *fi. fa.*, levy, inquisition, and *venditioni*, and that *213] *the premises in question were sold after due advertisements made for that purpose, on the 20th January 1785, to Brookes for 9l. 5s. The interest of Brookes became vested in the lessor of the plaintiff by two other mesne conveyances.

The defendants claimed under a later warrant, on which no survey had been made, nor efforts shewn to procure one to be made by Bartram Galbraith the warrantee.

The defendant's counsel before they opened their defence, moved for a nonsuit. The plaintiff by his own shewing cannot recover. The sheriff could not legally advertise lands for sale, without having a writ of *venditioni exponas* in his hands. 1 St. Laws, 68, 69, sect. 3, 4. He was authorised by such writ to give public notice of the sale ; but by a *venditioni* which issued on the 29th January, he could not possibly sell on the same day. The case might be compared to an assignment by the commis

[Glancey's Lessee v. Jones.]

sioners of bankrupt, which passes no interest before enrolment; a lease made under it, though it was enrolled three days afterwards, is of no validity. Carth. 178. 1 Show. 200. The sheriff's deed could not take effect without an acknowledgment in open court, nor could such acknowledgment be made until the return day of the writ. What was done at the adjourned court on the 8th February was a mere nullity. The injured party could not except to the sale at an earlier day, and if such a practice was tolerated, the greatest oppressions might be committed without any possible remedy. This point has been determined on solemn argument in Mifflin county, in the Circuit Court of May 1802, between Murphy's lessee and M'Clearey and Devinney.

The court said they were not aware how the plaintiff could get over the two objections stated against his title; but they did not feel themselves authorized to direct a nonsuit, if the plaintiff's counsel were disposed to answer. 2 Term Rep. 281. 1 Term Rep. 176.

The counsel having closed their address to the jury, the court gave it in charge, that the title under Baxter was preferable to that under Galbraith. The only question was whether the title of the former was legally vested in the plaintiff. Lands in England cannot be sold by process of law for debt. It has been the policy of this government since the first settlement of the province, to subject real as well as personal property to the payment of debts; but the mode of selling lands by sheriffs is pointed out by our municipal acts, which must be conformed to. The act of 1705 expressly directs, that a *venditioni exponas* shall issue *to sell lands, unless in the case of a *scire facias* on [*214 a mortgage. Without such writ, the sale by a sheriff is utterly void, and has been so determined. Two acts of assembly have been passed to remedy defects of this nature, the one on the 23d March 1764, 1 St. Laws, 440, the other on the 26th March 1785, 2 St. Laws, 283, but the language of both acts is confined to cases which happened before those laws were enacted, and is not prospective. They clearly shew that a legislative provision was deemed necessary to cure such title. Under what authority could the sheriff proceed to advertise lands for sale, unless by a writ of *venditioni* directed to him? Clearly none. His power is derived from his writ.

It has been urged on the part of the plaintiff, that the jury may presume a writ of *venditioni exponas*, returnable to January term 1785, to have issued; that the sheriff advertised under it, and the sale having been during the court, and the return day passed, a new *venditioni* issued to validate the sale. But there is no room for this presumption, as the facts disclosed in evidence repel it. The sheriff's deed recites the original writ of *venditioni exponas* to have issued returnable to April term 1785, and it is not styled an *alias* in the record.

[Glancey's Lessee *v.* Jones.]

Another objection occurs, equally fatal to the sheriff's deed. It was acknowledged on the 8th February, seven weeks before the sheriff was to return his writ, and thereby make known to the court what he had done thereon. This is the proper time for persons injured by sheriff's sales, to apply to the court for redress. This is the period of acknowledgment, according to the words of the 4th section of the act of 1705, 1 St. Laws, 69, which "has been heretofore used upon the sheriff's sale of lands." It cannot be dispensed with. A contrary doctrine would open a door to the greatest mischiefs. Such were the grounds of decision in Murphy's lessee *v.* M'Cleary *et al.* at Lewistown. That case has been attempted to be distinguished from the present, inasmuch as the debtor was one of the defendants. But the distinction does not rest on legal grounds. A plaintiff in ejectment is bound to shew a right of property or of possession, before he can turn out the defendant. If the title of Armor has not been legally devested; though he or his heirs are no parties to this suit, the defendant may take advantage thereof.

We are perfectly aware of the feelings and leanings of juries in matters of this nature; but the duty they owe to their country as well as themselves, should induce them to govern their verdict by the known laws. In a state of society, it is much better to submit to a partial evil, than introduce a general mischief.

The jury staid out all night, and the next morning gave a verdict *for the plaintiff, provided the sale of the sheriff was valid in point of law. The plaintiff's counsel insisted, that they should find a general verdict. They retired to reconsider their verdict, and in one hour found generally for the plaintiff.

The defendant's counsel moved for a new trial. The plaintiff's counsel were only heard thereon.

*Per Cur.* The verdict is against our ideas of the clear law, and the decided charge of the court. In matters of small value, the court will not grant a new trial; but where a verdict has been given against law, the case is otherwise, (1 Term Rep. 171;) for in such instances, a third new trial has been granted. We do not feel disposed to throw any weight against sheriff's sales, and so told the jury. But we are bound as far as we can, to preserve the law inviolate, and to award new trials where its rules have not been adhered to. Both of the exceptions which have been made to the sheriff's deed appear to be fatal. We know of no practice in York county, which sanctions a sheriff's deed, under circumstances similar to the present. But we well know if such practice has prevailed, it is bad in itself, and must lead to the most injurious consequences. No usage can repeal the positive provisions of an act of the legislature. 2 Term

[Gripe's Lessee *v.* Baird.]

Rep. 275. We find ourselves constrained to award a new trial without costs.

Messrs. Bowie and Watts, *pro quer.*

Messrs. Duncan and Hopkins, *pro def.*

Cited in 10 Watts 23 to shew that when the acknowledgment of a sheriff's deed is once taken, everything which has been done is considered as done by the previous order or subsequent sanction of the court, and cannot afterwards be disapproved of collaterally.

Referred to in 2 W. & S. 290.

Distinguished in 3 W. & S. 319.

Cited in 14 Pa. 79 where the court considers what defects may be cured by the acknowledgment of a sheriff's deed.

Cited in 15 Pa. 94 in support of the decision that though parol evidence is not admissible to contradict or vary a sheriff's return to a writ, yet, where ambiguity exists in it, parol proof of facts consistent with and not appearing on the face of the return may be heard in explanation, and to show the truth of the case.

A person may be estopped by circumstances in evidence, from attacking the title of purchaser of land at sheriff's sale, under a *vend'. ex.*, without inquisition or formal waiver: 1 Sup. Court Dig. 304.

See Baird *v.* Lent, 8 Watts 422; Porter *v.* Neelan, 4 Yeates 103; Critchlow *v.* Critchlow, 2 Pa. Sup. Court Dig. 281.