## Leshey *against* Gardner.

The recital in a sheriff's deed that the sale was made by a former sheriff, is not conclusive evidence of the fact; but the party claiming under it may show by other proof, that it was in fact made by the same sheriff who made the deed.

A writ of *venditioni exponas* is directed generally to the sheriff of the county; and if the sheriff who receives the writ goes out of office before it is executed, his successor may proceed upon it to sell the property, and make a deed to the purchaser.

A trust as to real estate purchased at sheriff's sale, cannot be established by parol evidence; nor is it competent for the defendant, in an action of ejectment against him or one holding under him, to prove a fraudulent combination between him and the purchaser to defraud creditors.

A confirmation by the Orphans' Court of a sale of real estate by an executor made in pursuance of its authority, is not complete until the purchase money be paid and a deed delivered. A sale and confirmation alone is not such a parting with the title, as would defeat a pending action of ejectment by the executor.

ERROR to the Common Pleas of *York* county.

James Lewis, Esq., Executor of John Gardner, Esq., against Jacob Leshey and Jacob Leshey, Jr.

This was an action of ejectment brought by the defendant in error against the plaintiffs in error for 170 acres of land in York county. The plaintiff below claimed title in his testator, through an alleged sheriff's sale of the property as the property of Jacob Leshey, at which his testator became the purchaser.

The plaintiff gave in evidence a judgment in the Common Pleas of said county, *Joseph O'Brien et al* v. *Jacob Leshey*, for $1622.07, on 11th of May 1835. Also, a *fieri facias*, levy, and condemnation on this. He then offered in evidence a *venditioni exponas* on the

[Leshey v. Gardner.]

same judgment, November term 1836, No. 9, accompanied with the following testimony :

Jacob Glessner, Esq., sworn.  I found this writing among sheriff Eichelberger's papers, about fifteen minutes ago, having searched for it at the request of Mr Chapin.  Mr Eichelberger left the country five or six years ago.  I had some of his sheriff's papers before he left, and this among them.  I served some writs for him, and did some writing for him.  I did business for him the better part of a year, and his papers came into my hands while I was in his employ.  I received a quantity of his papers in a basket since he went away.  I can't say what time I clerked the sale of real estate on this writ.  Don't remember being present at the sale of the real property.  The office of sheriff Eichelberger expired before November court 1836.

And to be followed by proof that a sale of the property was made by virtue of this writ, and then to give in evidence the deed of A. Klinefelter, sheriff, successor of Adam Eichelberger, dated 10th of November 1836.  The defendants objected.  The court admitted the writ, the defendants excepted, and the court sealed a bill of exceptions.

The plaintiff next offered to give parol evidence of the sale on the *venditioni exponas.*  The defendants objected to the evidence.  The court admitted it, and sealed a bill of exceptions.

The substance of the proof was, that both the sheriffs and each of their clerks were at the sale, superintending it; that the property was struck down to the plaintiff's testator for $1500, who paid the purchase money, and it was afterwards appropriated to the payment of liens against the defendant in the execution.

The plaintiff then offered in evidence the deed of sheriff Klinefelter to John Gardner, which recited the whole proceedings upon the *fieri facias* and *venditioni exponas,* including the sale, to have been made by sheriff Eichelberger, and then sheriff Klinefelter conveyed the premises, acknowledged the deed, and received the purchase money.  · To this evidence the defendant objected, but the court overruled the objection, and sealed a bill of exceptions.

The plaintiff then gave in evidence a lease by John Gardner to Jacob Leshey of the premises for one year, in consideration of the rent of $150.

Sheriff Klinefelter went into office the 19th of October 1836, and the sale and deed were subsequent.

The defendant then offered in evidence a writ of *venditioni exponas* to the same term between other parties, accompanied by proof that it and the one on which the sale was made, were the only ones issued to that term, which the court rejected and sealed a bill of exceptions.

The defendant then offered the deposition of Lewis C. Leshey, to prove that the property was purchased by Gardner in trust for

[Leshey v. Gardner.]

the defendant, and that the lease was made for the purpose of defrauding creditors. This was objected to by the plaintiff, on the ground that parol proof was incompetent to affect his title, and that it was not competent for the defendants to prove that the lease referred to in the deposition was made to defraud creditors. The deposition was rejected and exception taken by the defendants, and the court sealed a bill of exceptions.

The defendants further gave in evidence, the petition of plaintiff, as executor of John Gardner, deceased, filed in the Orphans' Court on the 3d of November 1840, for an order to sell lands, including the property in dispute, for the payment of debts, and that an order to sell was issued, on which the plaintiff reported on the 4th of January 1842, to the Orphans' Court, a sale of the property in dispute, to Peter M'Intyre, and that on the same day the sale was confirmed and the property decreed to be and remain to Peter M'Intyre, his heirs and assigns, firm and stable for ever.

The defendant requested the court to charge the jury:—

1. That there was no legal sale made by the sheriff of York county, to John Gardner, of the property claimed in this suit — that there was no return to the writs of execution and no valid deed executed.

2. That the agreement of 22d of March 1839, between Jacob Leshey, Sen. and John Gardner, cannot operate to transfer the title to the latter, if there was no sheriff's sale, and does not estop the former, then and yet in possession of the property, from contesting the fact of there being a sale.

3. That the agreement last mentioned cannot affect Jacob Leshey, Jr., and if the plaintiff found his title upon that, and there was no sheriff's sale to John Gardner, as above stated, then there can be no recovery in this case.

4. That the records of the Orphans' Court of the proceedings of the plaintiff to sell the land claimed in this suit, show that he has parted with his title since the suit was brought.

5. That if the plaintiff parted with his title since the suit was brought, he cannot recover the land in this case, but only damages for the ouster and costs.

To which the court answered:—

Durkee, President.—1. The court cannot instruct the jury that there was no legal or valid sale made by the sheriff of York county to John Gardner, of the property claimed in this suit. Whether there was or not, is a matter to be determined by the jury, under the instructions of the court, as to the law applicable to the facts of the case. Nor can we instruct you that there was no return to the executions, except as to the *venditioni exponas*, which was not returned.

2. If John Gardner paid the consideration money mentioned in his sheriff's deed, and Leshey afterwards entered into the agreement, or lease given in evidence, the latter is estopped by the

lease, and cannot in this action contest the fact of there having been a sheriff's sale — otherwise, if the consideration money *was not* paid by Mr Gardner.

3. The lease cannot affect Jacob Leshey, Jr., unless he holds under it. If his father, having obtained the lease, permitted him to come into possession under him, he, as well as his father, is bound by the lease.

4 and 5. There is nothing in the record of the proceedings in the Orphans' Court, given in evidence—nor any other evidence in the cause, which shows that the plaintiff has parted with his title since the commencement of the suit, so as to affect his right of recovery.

*Mayer*, for plaintiff in error, argued that the writ was not legally executed by either sheriff. By the statute 25 *Geo. II. c.* 37, it is provided that writs be assigned to the new sheriff. *Wats. on Sheriff* 19, 20; *Cro. Eliz.* 365. Although our practice may dispense with a formal assignment, yet there must be a delivery of the writ to the new sheriff, or he will have no authority: here it was made clear by the plaintiff's testimony that the sheriff who made the deed never had the writ in his hands; it was issued to his predecessor and produced on the trial from his papers. A sheriff's sale must be made according to the requisition of the statute, and parol evidence is not admissible to aid or supply the place of a return of the writ. 4 *Yeates* 108, 212; 5 *Con.* 400; 9 *Serg. & Rawle* 221; 2 *Rawle* 91.

The court erred in deciding that the defendants were estopped by the lease; whereas one of the defendants was not a party to it. 3 *Rawle* 497; 6 *Watts* 492; 2 *Story's Eq.* 61; 2 *Watts* 327; 9 *Watts* 32; 10 *Watts* 313; 1 *Watts & Serg.* 372; 1 *Rawle* 480.

The decree of the Orphans' Court, confirming the sale by the executor, vested the title in the purchaser and was fatal to the plaintiff's recovery. 10 *Watts* 222; 3 *Watts* 83.

*Campbell*, for defendant in error, argued that the neglect of the officer to return his writ would not defeat the purchaser's title, and the parol evidence was not given to contradict, but to support the record and make it perfect. The party accepting a deed is not estopped by a recital which is not true, and it therefore became important to show that the sale was in fact made by the sheriff in office. 10 *Johns.* 381; 9 *Watts* 363. If the sale was erroneous or insufficient, the objection should have been made before acknowledgment. 2 *Binn.* 227; *Act of 1st April* 1837, *Pamph. Laws* 132.

The testimony of Leshey could not be admitted to establish a trust. 2 *Watts* 323; 9 *Watts* 42; 10 *Watts* 313; 1 *Watts & Serg.* 372. Nor to invalidate the lease. 7 *Johns.* 16; 5 *Binn.* 109; 1 *Yeates* 291; 4 *Yeates* 95; 6 *Serg. & Rawle* 351; 2 *Watts* 226.

[Leshey v. Gardncr.]

The opinion of the Court was delivered by

ROGERS, J. — Joseph O'Brien and others obtained judgment against Jacob Leshey, one of the defendants. A *fi. fa.* was issued, the property in dispute levied on and condemned, and a *venditioni* issued and put in the hands of the sheriff. On this writ the property was sold, and the purchaser (the plaintiff's testator) paid the purchase money; which was regularly applied to the payment of the defendant's debts. The writ was not returned; but after the return day, viz. on the 10th of November 1836, A. Klinefelter, the then sheriff, (the former sheriff's term having expired before the sale), executed and acknowledged in due form a deed to the purchaser, reciting a *fi. fa.*, inquisition and condemnation by the former sheriff, Adam Eichelberger, "that by a writ of *venditioni* the said sheriff, &c. was commanded to expose the premises to sale, and that the said sheriff returned that *he* had sold the said property to John Gardner." After the execution of the deed, as above stated, Jacob Leshey, one of the defendants, took a lease of the premises from the purchaser.

The defence is, that the sale is void, and that the property was purchased in trust for the former owner, and with the intent to defraud creditors.

It is alleged that the sale was made by a sheriff not then in office, and, being void, the sheriff had no authority to execute the deed, and that consequently no title passes to the purchaser. It would seem, from the recital, that the sale was made by Eichelberger, and that it took place after he was out of office; *but as it is clear* that the recital in a sheriff's deed is not conclusive evidence of the facts stated in it, the plaintiff was properly permitted by the court to give evidence that the sheriff *then* in commission was present, and that in truth the sale was conducted under his auspices and by his authority. After the parol evidence was received, the court instructed the jury, that unless the sale was made by the sheriff then in office, the sale was void; and this was an instruction as favourable as the defendants had any right to ask; for on this the plaintiff's recovery, as the court clearly intimate, depends. But if, on the contrary, the sale was made by the *then* sheriff, the only thing amiss was, that the process was not actually in his hands, with the further objection that the writ was not returned.

The writ of *venditioni* is directed to the sheriff of the county, not to any particular person, and therefore it is the duty of the new sheriff to execute all writs not executed by his predecessor. Thus, in this case, it was the duty of the new sheriff to make the sale, and to make return of his writ. In England, the old sheriff, to exonerate himself from all charge, is required by the statute 20 *Geo. II. c.* 37, at the expiration of his office, to turn over to the succeeding sheriff, by indenture and schedule, all such writs and process as remain in his hands unexecuted, who shall duly execute

[Leshey v. Gardner.]

and return the same; and in case any sheriff neglect to turn over such process, he shall be liable to make satisfaction by damage and costs to the party aggrieved. We have no statute requiring this should be done in writing, and the practice is for the old sheriff to hand over the unexecuted process to his successor, whose duty it is to execute it. It would seem, that in England, until a writ of discharge is delivered to the old sheriff, he may lawfully exercise the duties of his office. But no such practice is known in this state, as the duties of the old sheriff cease, by tradition merely of the unexecuted process to his successor. The facts, as found by the jury, show an irregularity, at the most; and the court, I apprehend, on a proper application, would grant leave on the facts stated to return the writ *nunc pro tunc.* It is very unlike the principle ruled in *Porter* v. *Neelan*, (4 *Yeates* 108), and *Glancey* v. *Jones*, (4 *Yeates* 212), that a sheriff's sale of land without a *venditioni* is invalid. These cases were decided on the words of the Act of 1705, which expressly directs, that on the condemnation of lands, a *venditioni exponas* shall issue. Without it, he has no power to sell whatever, and a sale without authority is void, and consequently gives no title. But here, the sheriff had authority to sell, and the only defect is, that the writ was not actually, although it was potentially in his hands. And executing the deed without returning the writ, although certainly irregular, does not make the title absolutely void. Considering the title voidable, but not void, if it appears (and the jury have so found) that the purchaser paid the consideration money, and the debtor accepted a lease for the premises, the latter is estopped, and cannot in this action rely on any irregularity which attended the sale. It is against equity, even if the sale was void, that the debtor should keep the land and the money, as is shown in *Moody* v. *Vandyke*, (4 *Binn.* 40). The same principle applies to the other defendant, if, as was the case, the father permitted him to come into possession under him.

The writ of *venditioni* offered in evidence, being between other parties, was wholly irrelevant to the issue; nor do we perceive any error in rejecting the deposition of Lewis C. Leshey; for, admitting the truth of the very improbable story contained in his deposition, it proves nothing, which, in any view of the case, can avail the defendants. It is no evidence of a trust, because a trust, as to real estate, cannot be so proved, as is ruled in divers cases. *Kisler* v. *Kisler*, (2 *Watts* 323) ; *Sidle* v. *Walters*, (5 *Watts* 389), and *Robertson* v. *Robertson*, (9 *Watts* 35). So if there was a fraudulent combination between them to defraud creditors, it would not, as between the parties themselves, avoid the lease. Equity would not relieve a tenant, on proof of a combination to which he himself was a party, to cheat.

There is nothing in the objection that the plaintiff parted with his title since the commencement of the suit. Although the sale

[Leshey v. Gardner.]

made by the executor, in pursuance of an order of the court, was confirmed, yet the title of the owner was not devested until a deed was made to the purchaser. That a deed is required, appears pretty plain, from the Act of 1834; and besides, the purchaser is not bound to pay his money until the executor is in a condition to tender a deed. There is nothing in the Act which gives even colour to the idea that the confirmation of the sale transfers the title.

Judgment affirmed.