The opinion of the court was delivered by
Sergeant, X,
who, after stating the' material facts, proceeded thus:
By the appellant’s fifth exception, a question has been made as to the right of the Orphan’s Court to call trustees to account, which it is proper first to consider; for if that court had no jurisdiction in the matter, it would be unnecessary to discuss the other exceptions. It becomes important to decide this point, because proceedings in the Orphan’s Court against trustees, merely as such, have not been very frequent, and must now depend on the construction of the recent act of the 29th March, 1832, relating to Orphan’s Courts. A reference to our early laws, shows that the beginnings of the Orphan’s Court were very feeble ; but its powers have since been extended by the legislature, until they embrace a large and important sphere of jurisdiction. The first law of the province, which I have been able to discover, was passed in 1693. It enacted, that the justices of each respective County Court should sit twice in every year, to inspect and take care of the estates, usage, and employment of orphans; which should be called the Orphan’s Court, that care might be taken for those that are not able to take care of themselves. Another law of the same year required all executors, and guardians to persons under age, to give bond to the Court of Orphans, faithfully to discharge their trust. It is probable, that both the name and jurisdiction of this court were borrowed from the Court of Orphans of the city of London, which had the care and guardianship of children of deceased citizens of London, in their minority, and could compel executors to file inventories, and give security for their estates. Priv. Lond. 324. It is from the same source that several of our other laws and usages derived their origin, — such as foreign attachments, — feme-sole traders, — married women privately examined, conveying their estates, with their husbands, by deed: which practice afterwards pervaded this country *103 generally, and is lately established in England by statute. Priv. Lond. 70, 187. Bob. 225. 1 Cro. 699. 1 Prest. Abs. Tit. 336., None of these were known to the common law; but may be accounted for, when we recollect that many of the first colonists who accompanied William Penn, came from the city of London. In 1701, by the act for establishing courts of jurisdiction in the province, the Orphan’s Court had power to award process, and cause to come before them all and every such person and persons as were, or should be, entrusted with, pr in any ways accountable for any lands, tenements, goods, chattels or estate, belonging, or which should belong to any orphans, or persons under age, either as guardians, tutors, trustees, executors or administrators, and cause them to make and exhibit within a reasonable time, true'and perfect inventories and accounts of the said estate, and to require and take bonds and securities of such guardians, trustees, tutors, executors and administrators, for the legacies, portions, shares and dividends of estates, real and personal, belonging to orphans and minors, as occasion shall require, &c. This act was repealed not long after-wards : but in 1713, the court was revived, and its jurisdiction more precisely marked out, as well as extended, by an act, which remained in force from that time till 1832. It was declared a court of record; and power was given to it to cause to come before it all persons who, as guardians, trustees, tutors, executors, administrators, or otherwise, should be entrusted with, or in any wise accountable for any lands, tenements, goods, chattels or estate, belonging to any orphan or person under age, and to cause them to make and exhibit inventories and accounts of the estates. They were also empowered to oblige the register general, or his deputies, to bring in duplicates of all bonds, accounts, &c., relating to such estate. By the third section, they could compel persons, having the care and trust of minor’s estates, to give security, if like to prove insolvent, or neglecting to file inventories and accounts. By the fourth section, executors, guardians, or trustees might, by leave of the court, put out their minors’ money at interest; and in the eleventh section other powers over trustees for minors were given to the court. Various supplements to this act, and acts on other subjects, passed from time to time, greatly enlarged the power of the Orphan’s Court. Most of the provisions of these acts have now been introduced into the several revised codes of laws, passed by the legislature since 1830.
In the fourth section of the act of the 22d March, 1832, relating to Orphan’s Courts, it is declared, that “ the jurisdiction of the several Orphan’s Courts shall extend to, and embrace the appointment, control, removal and discharge of guardians, — the settlement of their accounts — the removal and discharge of executors and administrators, deriving their authority from the register of the respective county — the settlement of the accounts of such executors *104 and administrators, and the distribution of the assets, or surplusage of the estates of decedents after such settlement, among creditors or others interested; to the sale or partition of the real estate of decedents among heirs — and, generally, to all cases within their respective counties, wherein executors, administrators, guardians or trustees are, or may be possessed of, or undertake the care and management of, or are in any way accountable for any real or personal estate of a decedent — and such jurisdiction shall be exercised in the manner hereinafter provided.” The fifty-seventh section points out the manner of proceeding in various clauses, adapted to the respective cases, against persons answerable to the jurisdiction of the court. Sections fourteen, sixteen, and twenty, speak of trustees, and other sections, of executors, administrators, guardians, or other accountants.
It will be observed, by a comparison of the acts of 1701 and 1713, with that of 1832, that the language of the latter is more extensive, in relation to the jurisdiction over trustees, than that of the former. The acts of 1701 and 1713, were confined to cases of trustees having property belonging to orphans or persons under age; but the act of 1832 comprehends, generally, all cases where trustees are accountable for the estate of a decedent. This change, in the words of the act, was evidently intended to enlarge the power of tlie court; and there are many instances in which such a power is salutary and useful; furnishing a more complete and speedy remedy against a trustee, than could otherwise be obtained. It is true that a remedy is here given to a cestui que trust of property, which had been the estate of a decedent, which other cestui que trusts might not enjoy. But it seems to have been the policy of the legislature, to confer on the Orphan’s Court the superintendance of the property of decedents, in almost every respect, and to make all persons accountable in that court, into whose hands such property came; and, indeed, to enable it to hear and determine, by proceedings different from those of courts of common law, almost all judicial transactions, immediately arising from the decease of testators or intestates. In the recent codes, further jurisdiction is vested in. this court over many subjects never before possessed. I am of opinion that the Orphan’s Court had power to call Wimmer to account, as trustee, under the will of M. Detterly, senior, by the provisions of the act of the 29th March, 1832.
But in the case before us, the prior decree of the Court of Common Pleas, on the petition of Wimmer, dismissing him from his trust, was conclusive; and after that decree, the Orphan’s Court could not proceed to compel him to appear there and settle his accounts. By the third section of the act of the 14th of April, 1828, where a trustee has executed the trust or powers delegated to him, he may file his accounts in the Court of Common Pleas, on oath or affirmation, exhibiting a particular statement of his receipts and *105 expenditures, and after approval by the court, may pray a discharge. Citation is then to issue to persons interested, and the court are to proceed to hear and determine, and if it appears that the trustee has executed the trust agreeably to his power, he is to be discharged for ever. By the fourth section, any trustee who may not have executed the trust or power delegated to him, and who is desirous of being discharged from the further execution of the trust, may make application to the court, setting forth the facts, and praying the leave of the court to make a settlement of his accounts, so far as he has proceeded in the execution of the trusts, and that on surrendering the residue of the estate under his care to such person or persons as the court may appoint, the court will make an order dismissing such trustee from the duties of his appointment — whereupon the court is to proceed to hear and determine the matter, and make such order as to them shall appear just and equitable; and if it shall appear that the trustee has executed the trust agreeably to his powers, he shall be discharged "therefrom for ever. The 5th section gives a right of appeal within one year.
It was under the 4th section that the proceedings in the Common Pleas in this case were had. Wimmer stated in his petition the appointment of M. Detterly, Jr. and himself executors — that the portion of Margaret was to remain in their hands — that Detterly received Margaret’s share, and acted as her trustee — his decease, and the devolution of the trust on Wimmer — that he was desirous of being discharged from the further execution of the trust, and had never received her share in trust for her use, and prayed the court to make an order dismissing him from the duties of his appointment and to appoint another. Atherholt’s petition confirmed this statement, and both were accompanied by an affirmation. The court then decreed that Wimmer should be discharged from the trust for ever. In so doing, we must take it for granted it was after hearing and examination of the allegations and proof — that it appeared to them, in the words of the act, just and equitable they should do so — that it also appeared Wimmer had executed the trust agreeably to his powers, and that the contents of his petition were true, namely, that he had received no trust money and had no account to settle. Otherwise the court would not have dismissed him, without first requiring him to settle his account. If, after being thus for ever dismissed, on the ground that he had executed his trust, and had received no moneys as trustee, he can again be called on in another court, to answer a charge that he had received money as trustee and had an account to settle, it is evidently a proceeding directly at variance with the former, and contradictory to the decree of the court. The principle is now so familiar as almost to render it superfluous to refer to it, that the decree of a court of competent jurisdiction, on a matter within that jurisdiction, cannot *106 be controverted by a proceeding in another court. Here the proceeding in the Orphan’s Court brings directly in question, matters already heard and adjudicated in the Court of Common Pleas: and therefore the proceeding in the Orphan’s Court was in this respect erroneous.
Decree reversed.