## STOEVER *against* RICE.

### IN ERROR.

1. A mortgagee purchased the mortgaged premises at a sheriff's sale, by virtue of a *levari facias*, issued upon a judgment obtained upon the mortgage. He paid no money to the sheriff, but by an agreement with the latter, his receipt for the amount was treated as equivalent to payment of the purchase-money. The sheriff executed a deed, but never acknowledged it, the costs not having been paid to him, but the purchaser went into possession, and continued in possession several years, when a sale of the premises was made by virtue of an execution upon a judgment younger in date than the mortgage. *Held*, that the purchaser at this sale acquired no title, the proceedings under the mortgage having vested the equitable estate in the first purchaser, and leaving nothing for a second execution to act upon.
2. *It seems* that a court is not bound on the application of a junior incumbrancer, to require a purchaser at a sheriff's sale of real estate, to pay the purchase-money into court, where it sufficiently appears that such purchaser holds the first incumbrance, and that the purchase-money is not more than adequate to the payment of that incumbrance.

THIS was a writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action of ejectment, brought by Frederick Stoever against Robert Rice, to recover a certain messuage and lot of ground, situate in the City of Philadelphia.

On the trial of the case before Barnes, President, on the 10th of January, 1834, the circumstances appeared to be as follows:

The defendant was tenant of the premises in question, under one Robert Fleming, who claimed to be owner of the same in fee simple, by virtue of a sheriff's sale upon an execution.

*On the 1st of July, 1811, John Cook, being then the owner of the premises, mortgaged them to Robert Fleming, for the sum of $3000; which mortgage Fleming assigned on the 31st of May, 1813, to John Dickson and Robert Fleming (himself) executors of Robert Gordon, deceased. [*22]

A judgment was obtained in the District Court of Philadelphia, on the 11th of June, 1812, by Daniel Mann against John Cook, which judgment was renewed from time to time. It became a lien on the premises on the 19th of September, 1821.

In 1822, Fleming agreed with Cook to take the premises off his hands, and that a title should be made to him under the mortgage.

Accordingly a *scire facias* was sued out by Robert Fleming, who survived John Dickson, and who, with the said John Dickson, were surviving executors of the last will and testament of

(Stoever *v.* Rice.)

Robert Gordon, deceased, assignee of Robert Fleming, against John Cook to December Term, 1822, of the District Court of Philadelphia. And on the 30th of November, 1822, under a judgment confessed in that suit, the premises were sold by the sheriff to Fleming, who purchased them through his counsel and agent, Mr. Peters. The sheriff agreed with Mr. Peters, that the mortgagee's receipt for the purchase-money should be accepted in lieu of .the purchase-money; and Mr. Peters directed the sheriff to have a deed of the premises drawn to Fleming the purchaser, which was accordingly done, and notice given to Fleming by Mr. Peters, that the deed was lying in the sheriff's office. Some weeks or months after the sale, the premises were taken possession of by Fleming, but without the sheriff being in any way privy to that act; and were held by Fleming, by himself, or his tenants, down to the time of the trial. He never offered the sheriff the receipt for the purchase-money, nor did he call for the deed which was drawn for him, or pay the costs of the action, or take any other step towards perfecting his title; on the contrary, when the sheriff's officer called on him for the costs, he was unable to get them from him; nor had they been paid or offered to be paid, down to the time of the trial; nor had a receipt been tendered for the purchase-money.

Between two and three years after the sale to Fleming, and after the sheriff who made the sale had died and been succeeded by another, viz. on the 23d of May, 1825, Fleming obtained from the District Court, a rule upon the new sheriff to show cause why he should not acknowledge to him a deed of the premises sold him by the former sheriff. That rule was then made absolute. After obtaining it, Mr. Thomas Mitchell, as the agent of Fleming, prepared a deed from the new sheriff to Fleming, which he placed in the sheriff's office, to be executed and acknowledged, Mitchell being assured by the said sheriff, that the acknowledgment would be made.

These steps being taken, nothing further was done by Fleming [*23] *for two or three years more, and until the second of the sheriffs aforementioned, had got out of office, and a third sheriff had come in, when application being made at the sheriff's, prothonotary's, and other offices, the deed drawn by Mitchell, and the other papers belonging to it could not be found, though diligent search is said to have been made for them.

A *venditioni exponas* issued to March Term, 1829, under the judgment mentioned above to have been obtained by Daniel Mann, against John Cook, and the premises were sold under it to the plaintiff, Frederick Stoever, jun., on the 24th of March, 1828, to whom the sheriff acknowledged a deed, and who thereupon brought this action to recover possession of the property.

(Stoever *v.* Rice.)

Beside the foregoing facts, showing, as was contended, the unreal character of the sale of the premises to Fleming, under the mortgage, it was contended on the part of the plaintiff, that circumstances appeared on the face of the papers exhibited by the defendant, which made the reality. of the mortgage itself questionable.

The plaintiff contended,

1. That the mortgage itself was unreal.

2. That the sale to Fleming under the mortgage was a mere cover for the mortgagor's (Cook's) property. That there never was any design on the part of Fleming, to take a deed from the sheriff, until alarmed into it by the levy made under Mann's judgment in 1828.

3. That Fleming could not lawfully purchase the premises at a sale held by himself as executor, it being the case of an executor purchasing at his own sale.

4. That though the mortgage and the sale under it were *bona fide* and legal too, the defendant had forfeited by his laches all the equity upon which he otherwise might rely to resist the plaintiff's claim, by long and extravagant delay to take a deed and perfect his title.

5. In answer to the suggestion, that Fleming, apart from his right as a purchaser, stood in the position of a mortgagee in actual possession of the mortgaged premises, and could not be expelled from them, but upon payment of the mortgage-money due him, the plaintiff replied,—1. That if Fleming were a mortgagee in possession of the mortgaged premises, he could not under the law of Pennsylvania retain possession against the plaintiff. 2. That Fleming's possession was tortious and fraudulent, and therefore could not avail him.   3. That Fleming was not the mortgagee ; having ten years before the period in question, namely in 1813, assigned the mortgage for a valuable consideration, and by deed regularly executed and recorded, to the estate of Robert Gordon, deceased, and having never since then had any concern in it, except as Gordon's *executor. That the possession was not taken by Fleming as Gordon's executor, but in his own individual capacity appeared in various way. [*24] 1. By the deposition of Mr. Peters.   2. By the paper produced by Mr. Mitchell.   3. By the two deeds being drawn to Mr. Fleming in his individual capacity.   4. By the fact of Fleming's agent signing the conditions of sale, *"for Robert Fleming."*   5. By the absence of all proof to the contrary.

The learned Judge, however, charged the jury as follows : "This is an action of ejectment : there is a single question of fact in the case, and that is whether there was a sufficient consideration for the mortgage : that is the only question of fact

(Stoever *v.* Rice.)

made. Other circumstances have been commented on. There is no evidence to justify you in presuming that the mortgage was fraudulent. My instructions to you, are to find a verdict for the defendant."

The jury found a verdict accordingly; and the plaintiff took a writ of error, and assigned several exceptions; but the only error alleged in the argument, was in the charge as above stated.

Mr. *C. Ingersoll* and Mr. *Randall*, for the plaintiff in error, cited *Naglee* v. *Stewart*, (10 Serg. & Rawle, 207); *Jones* v. *Peterman*, (3 Serg. & R. 545); *Seymour* v. *Delancey*, (6 Johns. Chan. Rep. 222); *Catlin* v. *Jackson*, (8 Johns. Rep. 550, 553); *Vastine* v. *Fury*, (2 S. & Rawle, 428); *Case of Eleventh St.* (1 Wharton's Dig. 358); *Wordsworth* v. *Wendell*, (5 Johns. Chan. Rep. 224); *Hatch* v. *Cobb*, (4 Johns. Chan. Reps. 559); *Ballard* v. *Walker*, (3 Johns. Cases, 60); *Benedict* v. *Lynch*, (1 Johns. Chan. Rep. 376-9); *Sugden* v. *Vendors*, 245-6.

Mr. *Rawle* and Mr. *J. R. Ingersoll*, for the defendant in error, cited Preston on Abstracts of Title, 237; 1 Wharton's Dig. Tit. Equity, 740; *Scott* v. *Greenough*, (7 Serg. & R. 197); *Naglee* v. *Stewart*, (10 Serg. & R. 207); *Hartman* v. *Dowdle*, (2 Penn. Rep. 223); *Hartman* v. *Stahl*, (16 Serg. & R. 299); *Simpson's Lessee* v. *Ammons*, (1 Binn. 175); *Smith* v. *Shaler*, (12 Serg. & R. 240); *Ferris* v. *Fuller*, (4 Johns. Rep. 215); *Alleson* v. *Rankin*, (7 Ser. & R. 269); *Muse* v. *Letterman*, (13 Serg. & R. 167.)

The opinion of the Court was delivered by

GIBSON, C. J.—It is unnecessary to say whether the mortgagee could have defended his tenant's possession on the mortgage alone; yet it may not be amiss to say it would be difficult to show that the judicial sale, at which the plaintiff purchased, as the law then stood, had not extinguished it as an incumbrance merely. Nothing, however, is clearer, than that the mortgagee had acquired an inchoate right, which was superior to that of an incumbrancer, by his purchase *under his own *levari facias*, and consequently an estate in the premises. When this court decided, as it did in *Scott* v. *Grenough*, that the sheriff may sue on the contract for the purchase money, it virtually decided the question before us; for it is impossible to conceive how a contract can be enforced without mutuality of remedy, not, perhaps, by mutuality of action, in a case like the present, but by an application on the part of the purchaser to the summary power of the court; and we must therefore take a sale by a sheriff, to be attended with the ordinary incidents of a sale by an individual. On payment or tender of the purchase-money, the ven-

(Stoever *v*. Rice.)

dee is invested with an equitable title, of which he cannot be divested, and which the law furnishes him with means to complete, by having the legal title added to it.*    Now there is nothing in the way of an agreement to exchange acquittances, as a substitute for circuitous payment, to authorize a subsequent judgment-creditor, who had not a right to touch a farthing of the money, to interfere with it.    How far the plaintiff was entitled to rule the money into court is not the question, as he attempted not to do so ; yet it may be said, that a court, in the exercise of its legitimate discretion, would not be bound to expose a purchaser at his own sale, to the vexation, and perhaps loss, of raising money to gratify the malice or caprice of a subsequent incumbrancer, who had not an interest in it, by a formal and circuitous payment back to himself.    But whatever may have been the plaintiff's power in this respect, he did not, as I have said, attempt to exert it ; and the arrangement of the sheriff with his vendee, was valid, at the return of the writ.    What intervened to invalidate it ?    Seven years had elapsed without interchange of acquittances, payment of costs, or acknowledgment of a conveyance, though one had been sealed, when the subsequent judgment-creditor proceeded to execution.    But what had he to do with that ?    It was not his business to provide for the costs of his competitor's action, or force the parties to close the transaction, by a conveyance of the title.    That was a matter betwixt the vendee and the sheriff's representatives, who would have been liable to the subsequent incumbrancers for the surplus, had there been any.    I have known more than one case of retention for the sheriff's security, while the title passed as to every one else. If the sale were regular, the plaintiff had ceased to have an interest in it ; and if it were not, his course was an application to have it set aside.    Abandonment of the contract to let in execution by other judgment-creditors, was out of the question.    The possession taken by the vendee, under his purchase, and his applications to the court to enforce a conveyance—inoperative, it must be admitted, in every other aspect—furnish a conclusive rebuttal of every adverse implication from lapse of time.    They show that he considered his debt as paid, and his ownership as entire, in respect to everything but a formal transfer of the title ; and why may not that be added still ?    If the proper parties choose *to consider the purchase-money as received on the one hand, and the mortgage-debt as paid on the [*26] other, it is their own concern.    The question is, whether a subsequent judgment-creditor can interpose to overturn a judicial sale collaterally, because its consummation may have been unu-

* See 8 Watts & Sergeant, 187 ; 4 Casey, 170.

sually delayed; and it has regard, not more to title in the defendant's landlord, than to want of it in the plaintiff.   By force of the sale, if not collusive in its origin, the property was *in gremio legis ;* and nothing was left for the action of a subsequent execution.   The question of fraud has not been agitated here, having been submitted to the proper tribunal; and it was properly said to be the only debateable ground in the cause.

Judgment affirmed.

Cited by Counsel, 5 Wharton, 181; 8 Watts, 274; 10 Id. 364; 1 Watts & Sergeant, 524; 5 Barr, 13; 1 Harris, 302; 2 Id. 340; 7 Casey, 417; 10 Id. 158; 2 Wright, 52.

Cited by the Court below, 7 Wright, 164.

Cited by the Court, 6 Wharton, 283; 10 Watts, 22; 1 Jones, 305, and followed 7 Watts, 438.

See also, 1 Jones, 26.