## Powers Estate.

Argued April 26, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Charles H. Sachs,* of *Sachs & Caplan,* for appellants.

*Floyd V. Winner,* for appellee.

OPINION BY STADTFELD, J., July 21, 1943:

This is an appeal from a decree of distribution in the Orphans' Court of Allegheny County. The facts are not in dispute and are correctly set forth in the opinion of the court below by MITCHELL, J., for the court en banc, from which we quote: "This case comes before us on exceptions to the decree of distribution in the estate of Ellis D. Powers, deceased, a resident of the County of Allegheny, State of Pennsylvania, who died February 23, 1939. The decedent, Ellis D. Powers, by his last will, which has been duly probated, devised and bequeathed all his estate, after the payment of his debts, to his three children, Bertha J. Irwin, Lester M. Powers, and Hazel H. Kelley, all of full age.

"On August 9, 1941, before the estate had been administered and the final account of the executor had been filed, the three children of decedent with their respective spouses entered into an agreement in writing to sell to Emanuel H. Wimmer and Frances B. Wimmer,

his wife, a certain tract of land in McCandless Township, County of Allegheny. The consideration, $4,500, was to be paid 'after the approval of the Orphans' Court of Allegheny County if said approval be necessary to consummate the sale.' The parties desired John E. Winner, executor of the estate, to join in this agreement. For some reason he was not willing to comply with the request and prepared another agreement, which was submitted to the Powers heirs but was never signed. The executor subsequently wrote into the signed agreement the following: 'I join in the within agreement on condition that the deed to be given shall be a special warranty deed. John E. Winner, Executor of the Estate of Ellis D. Powers.'

"After the execution of the agreement it was discovered that judgments had been entered against the interests of Bertha J. Irwin and Hazel H. Kelley in an amount in excess of their interests in their father's estate. At a conference attended by the heirs of decedent, the purchasers under the agreement, and the executor of decedent's estate, it was agreed the executor should file a petition praying for a sale of this real estate for the payment of debts under Section 16 of the Fiduciaries' Act of 1917, in order to pay decedent's debts and make satisfactory title to the land.

"Accordingly, a petition for the sale of the property for payment of debts was prepared, and on presentation to Court an order was made on November 5, 1941, fixing Tuesday, December 2, 1941, at ten o'clock A.M., as the time for hearing. The petition averred the petitioner, the executor of the estate, had entered into a contract to sell the said real estate to Emanuel H. Wimmer and Frances B. Wimmer, his wife, for the sum of $4,500 and that all the heirs had joined in that agreement. Petitioner prayed for an order authorizing him to sell the premises to the Wimmers in order that the debts of decedent might be paid.

"After due notice given of the petition and the time for hearing the matter was heard by the Court at the time fixed. Michael F. Abbott and Samuel Abbott appeared at the hearing, as did Emanuel H. Wimmer and Frances B. Wimmer, his wife. Several bids were made by these parties, that of M. F. Abbott and Samuel Abbott for $6,500 being the highest and best offer, and the property was sold by the Court to them. The amount was $2,000 in excess of the original bid of the Wimmers. The Abbotts paid the executor the amount of their bid, as is shown in the first and final account of the executor, filed in this Court on December 19, 1941.

"At the audit of the executor's account Emanuel H. Wimmer and Frances B. Wimmer presented a claim for $2,000, the amount received by the executor in excess of their offer as set forth in the petition, on the ground that they had produced this fund and that under the agreement of sale referred to above a conversion of the land had been effected and as vendees they were entitled to this excess amount. At the same time the Wimmers filed a petition asking that this $2,000 be impressed with a trust in their favor and be awarded to them. The Auditing Judge denied their claim, whereupon the Wimmers filed exceptions.

"The exceptions are based on the refusal of the Court to find there was a trust in their favor and to the distribution of the fund in the executor's hands as set forth in the decree of distribution. It may be admitted the agreement of sale between the heirs of decedent and the Wimmers was valid when made. However, the sale could not be consummated, and it was decided by all parties to the agreement and by the executor that in order to procure a marketable title to the land and to settle the estate a sale of the realty in question for payment of debts should be made under the Fiduciaries' Act of 1917. This action having been agreed to by all

parties in interest, the executor proceeded to have the sale made under direction of the Court."

Appellants contend that the surplus produced by the judicial sale in excess of the amount for which the property was sold by the vendors to the vendees, appellants, less so much of the surplus as was consumed by the payment of the liens against the vendors, belongs to the vendees and should have been awarded to them rather than to the vendors, upon the distribution of the fund.

When the matter was brought under the jurisdiction of the Orphans' Court, the agreement of the heirs with the Wimmers was superseded. There was no conversion until the title is vested in the vendee and the consideration paid. If any right existed under the claim by the Wimmers of conversion it was annulled by the sale proceedings under the Fiduciaries' Act of 1917. Appellants knew or should have known that in the consideration of the petition for sale, the court would entertain higher bids as it did in the instant case. Non constat the Wimmers would become the purchasers, nor did they as they were not the highest bidders. The agreement of sale was not absolute, but only "after approval of the Orphans' Court of Allegheny County, if said approval be necessary to consummate the sale." In order to obtain a good title resort had to be had to the Orphans' Court and the sale was subject to its approval.

The opinion of the court below fully sustains its decree. We quote therefrom: "This was not a sale on the contract but one under the authority of law. An Orphans' Court sale is altogether different from a sale between private parties. The question of equitable conversion is not to be recognized in a sale by the Court. The duty of the Court as well as the fiduciary is to do that which is most beneficial for the estate. The proceedings are altogether under the direction and supervision of the Court from their inception to the final

approval and order confirming the sale and until a deed is delivered. There is no conversion until the title vests in the vendee and the consideration paid: Brennan's Estate, 220 Pa. 232. This question was fully considered and settled in Demmy's Appeal, 43 Pa. 155, a leading case in Pennsylvania which has been followed since that time. The rule and duty imposed on the Court is to see that a full and fair value is received. The instant case is an illustration of the worth of this rule: Orr's Estate, 283 Pa. 476; Hickey's Appeal, 124 Pa. Superior 213."

In *Demmy's Appeal,* supra, relied upon by the court below and by the appellee, it is stated at pages 167-168 as follows: "...... In ordinary sales by articles of agreement the purchaser is entitled to accretions, and must sustain any loss caused by accidental injuries to the property between the time of the agreement for the purchase and the execution of the deed. This appears to be well settled. Equity regards that as done which has been agreed to be done, and which the parties to the agreement have in their power to do: Richter v. Selin, 8 S. & R. 440. Such a sale, therefore, works a conversion, and if the vendor by articles die before conveyance, the purchase money is substituted for the land, and passes to the personal representatives of the vendor, and not to his heirs. On the other hand, if the vendee die before conveyance, his personal representatives take nothing. The land descends to his heirs. For authorities collected upon this subject, references may be made to 2 Story's Eq. Jur., p. 98, and notes. But the reasons which apply to private executory contracts of sale, and which have led to the establishment of the principle that a vendee by articles is, in equity, the owner of the land which was the subject of the contract, and, as such, must run the hazard of any deterioration in its value, that may take place before the conveyance of the perfect title, do not apply with equal force to Orphans'

Court sales for the payment of the debts of a decedent. Such sales are not absolute and unconditional. They depend for their validity upon the approval and confirmation of the court. They are liable to be vacated by a power superior to the purchaser and against his will. The sale, even after confirmation, does not divest the title of the heirs of the decedent, for it remains in the power of the court until a deed has been executed and delivered. Until then, their right to maintain ejectment, even against the purchaser, has not gone: Leshey v. Gardner, 3 W. & S. 314. Until then, no conversion takes place, and if the heir of the decedent die, even subsequently to the confirmation of the report of sale, but before the deed, his interest descends as land, and not as money: Erb v. Erb, 9 W. & S. 147; Biggert's Appeal, 8 Harris 17. These cases recognize a clear distinction between sales made under order of an Orphans' Court and private sales. The latter are exclusively acts of the parties, and are beyond the control of any other power. The former are not the acts of the decedent or his heirs or devisees. They are the acts of the court, and they require no consent of the owners. In substantial fact, the purchaser buys from the court through its agent. The court reserves the power to decline his bid, and to disannul the act of its agent, until the sale has been fully consummated." *Demmy's Appeal,* supra, has been approved and followed in numerous cases since it was decided, and has become the leading authority in this State on the distinction between private sales and those made through proceedings in the Orphans' Court.

The assignments of error are overruled and the decree of the court below affirmed. Costs to be paid by appellant.