Brereton Estate.

46

Argued March 28, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John A. Metz, Sr.,* and *William J. Kenney,* with them *Rose, Eichenauer, Stewart & Lewis* and *Metz & Metz,* for appellant.

*Elder W. Marshall,* with him *Robert L. Kirkpatrick, Robert J. Dodds, Jr.,* and *Reed, Smith, Shaw & McClay,* for appellee.

*W. St. Clair Childs, Robert F. Barnett* and *Childs & Barnett,* for ancillary executor.

*Harry F. Stambaugh,* with him *James H. Duff,* Attorney General, for Commonwealth.

*William S. Moorhead,* with him *Arthur W. Henderson, Judson A. Crane* and *Moorhead & Knox,* for Thomas M. Evans, amicus curiæ.

*Samuel R. Rosenbaum,* with him *Charles T. Bonos, Jr.,* for Philadelphia Bar Association, amicus curiæ.

*Charles F. C. Arensburg,* with him *Ella Graubart, Thomas L. Wentling* and *Patterson, Crawford, Arensburg & Dunn,* for Pennsylvania Real Estate Association, amicus curiæ.

48

*Robert Dechert,* with him *Theodore Voorhees* and *Barnes, Dechert, Price & Smith,* for William Goldman Theatres, Inc., amicus curiæ.

*J. Garfield Houston, John G. Kish, James L. Stuart, Jr.,* and *Blaxter, O'Neill & Houston,* for George R. Hann, amicus curiæ.

*David H. H. Felix* and *Felix & Felix,* for Frank and Sarah J. Blum, amici curiæ.

OPINION BY MR. JUSTICE LINN, September 30, 1946:

The question is whether the Act of May 24, 1945, P. L. 944, is constitutional. Its provisions are: AN ACT providing that when the contract of a fiduciary is made by him, or approved by court, inadequacy of price or an offer to deal on other terms shall not relieve the fiduciary of his obligation or constitute ground for any court to set aside the contract or to refuse to enforce it.

"The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

"Section 1. When a fiduciary shall hereafter make a contract not requiring approval of court, or when the court shall hereafter approve a contract of a fiduciary requiring approval of court, neither inadequacy of consideration, nor the receipt of an offer to deal on other terms shall, except as otherwise agreed by the parties, relieve the fiduciary of the obligation to perform his contract, or shall constitute ground for any court to set aside the contract, or to refuse to enforce it by specific performance or otherwise: Provided, That this act shall not affect or change the inherent right of a court to set aside a contract for fraud, accident or mistake.

"Section 2. Nothing in this act shall affect the liability of a fiduciary for surcharge on the ground of negligence or bad faith in making a contract.

"Section 3. This act shall become effective immediately on final enactment."

It is a general act to be applied by all courts having jurisdiction over fiduciaries. In the Statutory Construction Act of May 28, 1937, P. L. 1019, fiduciary is defined in section 101 (42) as follows: "(42) 'Fiduciary,' an executor, administrator, guardian, committee, receiver, trustee, assignee for the benefit of creditors, and any other person, association, partnership, or corporation, acting in any similar capacity." It came up for construction in the Orphans' Court of Allegheny County and the court held the act unconstitutional. The proceeding was an ancillary executor's petition for an order authorizing private sale of his decedent's real estate for the payment of debts pursuant to section 16 of the Fiduciaries' Act of June 7, 1917, P. L. 447, 20 PS 321. The petition averred that Harry G. Austin "has made a bid of $25,000 cash for the . . . property, and . . . signed . . . Articles . . . for the purchase of same, and that the said price offered is better than can be obtained at public sale." The court fixed a day for hearing and notice was given that the petition would be heard on the day fixed "when higher offers will be considered and exceptions or objections to the proposed sale will be heard."

The Fiduciaries Act, section 16 (m), (3), 20 PS 572, provides: "On the day fixed by such order and notice for authorizing or directing such private sale, any creditor of such decedent, or party interested as heir, devisee, or intending purchaser, or any legatee whose legacy is by the express terms of the will or by law charged on such real estate, may appear and object to such private sale on account of the insufficiency of the price, and, if such objection be sustained, may offer to give or pay a substantial increase for such property; and the court, at its discretion, may thereupon authorize or direct such sale, or refuse to authorize or direct the same, and accept any substantially increased offer, and may authorize the sale of such property to such new bidder upon compliance with the conditions of sale and giving such security as shall be directed by the court; or, such creditor, party

interested, or legatee may appear, as aforesaid, and object to such sale on any legal or equitable grounds: . . ."

Section 6 of Rule 13 of the court below provides: "On the return day of private sale of real estate, any person desiring to make a bid higher than that appearing in the petition shall state in open court the total amount he will bid; if the increase is material, the court may open the sale to competitive sealed bidding. After all parties interested have been given an opportunity to present sealed bids the court will order the property sold to the highest bidder; or, if the parties desire, the court may refer the matter to the clerk and fix a time and place during the same day when the clerk will offer the property at auction and make immediate return thereof to the court, whereupon the purchaser shall forthwith deposit cash or its equivalent with the fiduciary in a sum not less than ten per cent. of the amount of his bid."

What happened at the hearing is thus stated in the opinion filed by the court below: "Due notice was given of the proposed sale to be made on the 26th day of September, 1945 and, after competitive bidding, the court ordered a private sale to E. J. Carroll and C. A. Waite for $27,850.00, secured by a certified check, whereupon the ancillary executor was directed to make a deed for the property described in the petition. After the sale was ordered and before delivery of the deed to Carroll and Waite a petition was presented on October 10, 1945 by Harry G. Austin, the first bidder, praying for the revocation of the order of September 26, 1945 and, after notice to Carroll and Waite, upon deposit of a cashier's check by Austin, the previous order of sale was revoked and a new order of sale was made to Austin [for $30,-000.00] on the 10th day of October, 1945." Messrs. Carroll and Waite excepted to this action and contended that the order of the court was in conflict with the Act of 1945. After hearing on the exceptions, the court dismissed them and held the Act unconstitutional on the ground that it limited or restricted supervisory power

that had been exercised by the orphans' court prior to the effective date of the present Constitution, and that such legislation was prohibited by Article V, section 22, of the Constitution. This appeal was then taken.

Prior to the effective date of the Act of 1945, the courts had power to set aside a fiduciary's contract and to order resale at a bid substantially higher: *Dundas' Appeal*, 64 Pa. 325; *Orr's Estate*, 283 Pa. 476, 129 A. 565; *Kane v. Girard Trust Co.*, 351 Pa. 191, 40 A. 2d 466; *Clark v. Provident Trust Co.*, 329 Pa. 421, 198 A. 36; *Powers' Estate*, 153 Pa. Superior Ct. 161, 33 A. 2d 501. In *Kane v. Girard Trust Co.*, 351 Pa. 191, 196, 40 A. 2d 466, Mr. Justice DREW said, "It is mandatory upon trustees, with discretionary power of sale, to dispose of trust property upon the most beneficial terms which it is possible for them to secure: Orr's Estate, supra. The court, in its supervisory control for the benefit of all interested, has power to see that a fair value is received: Fricke's Estate, 16 Pa. Superior Ct. 38. 'It is not what was or what could have been obtained for the property, but what can be obtained for it that is the determining factor': McCullough's Estate, 292 Pa. 177, 181, 140 A. 865. A failure to obtain the most advantageous terms constitutes a breach of trust, and trustees may be surcharged for loss occasioned by a sale of trust property for an inadequate price: Leslie's Appeal, 63 Pa. 355. If a higher and better offer is obtainable from one person, after an agreement of sale has been entered into with another, the trustees are duty bound to rescind the agreement, return the hand money, and accept the higher offer. Good v. Capital Bk. and Tr. Co., 337 Pa. 353, 11 A. 2d 489." The principle had become a rule of property, a part of the substantive law, applied in all courts and not in the orphans' court alone. The Act of 1945 changed the substantive law. It provided that in certain circumstances the court could not set aside its approval after it was once given. The Act deals with two classes of contracts: (1) those not requiring court approval and

(2) those requiring it. Such contracts may be set aside for "fraud, accident or mistake," but not for a higher bid.

The question before the court is not whether this statute is a wise exercise of legislative power; that question is exclusively for the legislature and the executive. The courts must give effect to the Act unless it clearly appears that the legislation is prohibited by the Constitution: *Sharpless v. Mayor of Philadelphia*, 21 Pa. 147, 164; *Com. ex rel. v. Reeder*, 171 Pa. 505, 513, 33 A. 67; *Tranter v. Allegheny County Authority*, 316 Pa. 65, 75, 173 A. 289.

So far as now material, section 22, which was relied on as prohibiting the legislation, provides: "In every county wherein the population shall exceed one hundred and fifty thousand, the General Assembly shall, and in any other county may, establish a separate orphans' court, to consist of one or more judges who shall be learned in the law, which court shall exercise all the jurisdiction and powers now vested in or which may hereafter be conferred upon the orphans' courts, and thereupon the jurisdiction of the judges of the court of common pleas within such county, in orphans' court proceedings, shall cease and determine. . . ." That section authorized the legislature to establish a separate orphans' court and transfer to it the power exercised by common pleas judges in orphans' court proceedings in the counties in which such separate orphans' courts shall be established. No change was made for counties in which the orphans' court proceedings remained in the charge of the common pleas judges. By section 31 of the Schedule, adopted with the Constitution, the people directed that "The General Assembly at its first session, or as soon as may be after the adoption of this Constitution, shall pass such laws as may be necessary to carry the same into full force and effect." Pursuant thereto, the legislature passed the Act approved May 19, 1874, P. L. 206, entitled "An Act Relating to the organization and jurisdiction of orphans' courts and to estab-

lish a separate orphans' court in and for counties having more than 150 thousand inhabitants, and to provide for the election of judges thereof." In *Reid v. Smoulter*, 128 Pa. 324, 334-335, 18 A. 445, Justice CLARK said: "The legislature in the passage of this act of May 19, 1874, simply complied with a command of the constitution, [section 31 of the Schedule adopted with the Constitution of 1873] and thereby caused this provision of the constitution to come into effect. That act withdrew from the judges of the Court of Common Pleas of these respective counties the right to exercise the power of an Orphans' Court, and vested these powers in an independent and exclusive jurisdiction. We think it would not have been competent for the legislature, by a repeal of this act, to defeat and set aside the constitutional tribunals thus established; for these courts, although put into actual operation by the legislature, were created by and now exist under the authority of the constitution itself. Having done what the constitution required, it would not have been in the power of the legislature wholly to undo it. The constitution itself set up this system of separate Orphans' Courts, and it is for the legislature to regulate and maintain, not to destroy it. The constitution is the paramount law; it is above legislatures and courts; what is therein ordained and established cannot be set aside by a simple act of legislation." Except to provide for separate orphans' courts, as specified, section 22 made no other changes in the jurisdiction and powers of the orphans' courts as administered by judges of the courts of common pleas prior to January 1, 1874.

The basic error in this proceeding is in the construction put upon that section by the learned judge when he said: "By Article V, section 22, no change can be made by law for Orphans' Courts. There the powers 'now vested' can be changed only by Constitutional Amendment." Section 22 will not stand that construction; there are no prohibitive words justifying it: see *Sharp-*

*less v. Mayor of Philadelphia,* 21 Pa. 147, 160, and cases following it; compare *Sayres v. Commonwealth,* 88 Pa. 291, 308.

In *Com. v. Dabbierio,* 290 Pa. 174, 178, 138 A. 679, the general rule is stated: ". . . we have consistently held to the ruel that the language of the Constitution is to be interpreted in its popular sense, as the common people who adopted it, and made it their charter of government, must have naturally understood it when they voted on it: Gottschall v. Campbell, 234 Pa. 347; Long v. Cheltenham Twp. School District, 269 Pa. 472; Collins v. Kephart, 271 Pa. 428; Busser v. Snyder, 282 Pa. 440; Com. v. Yerkes, 285 Pa. 39." Section 22 read in the light of that rule, provides only for new orphans' courts not theretofore in existence. The words "all the jurisdiction and powers now vested," that is, jurisdiction and powers that were vested in all orphans' courts at that time, were used to describe the jurisdiction and powers to be exercised by the new orphans' courts. In other words, all the orphans' courts, new and old, should have the same jurisdiction and exercise the same powers all of which had been declared by statute. The uniformity provision [quoted later] of the same judiciary article requires that all orphans' courts exercise the same powers. In 1873, when the Constitution was adopted, the jurisdiction of the Orphans' Court had been for many years set forth in section 19 of the Act of June 16, 1836, P. L. 784, 792. That section provided: "The jurisdiction of the several orphans' courts shall extend to and embrace—I. . . . IV. The sale of real estates of decedents; . . . VIII. All cases within their respective counties, wherein executors, administrators, guardians or trustees, may be possessed of, or are in any way accountable for, any real or personal estate of a decedent. And such jurisdiction shall be exercised under the limitations, and in the same manner provided by law." The jurisdiction over each of the classes of subjects named was expressly conditioned on legislative regulation and was not absolute and un-

changeable. The Act of 1836 specified what were the classes of jurisdiction which the constitution identified by the words "now vested" as the jurisdiction and powers to be exercised by the separate orphans' courts when established by the legislation necessary to execute the constitutional direction. As the Act of 1836 vested the jurisdiction expressly subject to regulation by the legislature, the power to regulate of course remained with the legislature. The people, in adopting the constitution, understanding the words in their popular sense, did not intend that the separate orphans' courts should have different and greater powers than the existing orphans' courts whose powers, it is conceded, were subject to subsequent limitation. This conclusion is put beyond doubt by Article V, section 26. "All laws relating to courts shall be general and of uniform operation, and the organization, jurisdiction and powers of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process and judgments of such courts, shall be uniform; and the General Assembly is hereby prohibited from creating other courts to exercise the powers vested by this Constitution in the judges of the courts of common pleas and orphans' courts." While the orphans' court is a constitutional court which cannot be abolished by the legislature, it is not a common law court;* it is a court of limited powers conferred by statutes: *Watson's Estate,* 314 Pa. 179, 181, 170 A. 254. What was originally section 19 of the Act of June 16, 1836, P. L. 784, conferring jurisdiction and powers on the orphans' court was revised and supplemented by the Orphans' Court Act of June 7, 1917, P. L. 363, 20 PS 2082, as amended. In view of the erroneous conclusion of the court below that section 22 of Article V of the constitution prohibits the limitation of powers exercised by the orphans' court prior to 1874, it may be of interest to refer to some of the limitations of such powers enacted

---

* Concerning the origin of the court, see *Wimmer's Appeal,* 1 Wharton 96, at page 102.

since section 22 was adopted which show an accepted constitutional interpretation wholly inconsistent with the conclusion reached by the court below. The Orphans' Court Act of 1917, P. L. 363, section 18 (a) (5), 20 PS 2376, omits the power to issue writs of vend. ex. against real property although the power had existed since April 21, 1846, P. L. 430. Section 59 (e) of the Fiduciaries Act of 1917, P. L. 447, 20 PS 1025, restricted the power to appoint guardians for the estates of non-resident minors on petition of minors under 14 though the power had formerly existed under section 44 of the Act of April 25, 1850, P. L. 569. Section 41 (a) of the Fiduciaries Act, supra, 20 PS 801, 804, 805, changed the law by authorizing a fiduciary to make legal investments without prior approval of the court, though section 14 of the Act of March 29, 1832, P. L. 190, had authorized such application before investment. The Act of 1713, 1 Sm. L. 81, section 13, authorized the court to determine "The true intent and meaning of the testators" while the Act of July 9, 1897, P. L. 213, limited that power by requiring certain words to be given a specified construction. The Fiduciaries Act, in section 59 (c), 20 PS 1023, prohibited the appointment of a trustee as guardian of a minor interested in the estate administered by the trustee although prior thereto the only limitation in that respect under the Act of March 29, 1832, P. L. 190, section 6, prohibited his appointment as executor or administrator. Section 59 (d), 20 PS 1024, deprived the court of power to appoint the father or the mother of a minor as guardian of the minor's estate. It will be observed that most of those limitations were made in statutes drawn by the commissioners appointed to revise the Orphans' Court and Fiduciaries Acts.

Section 6 of Rule 13 of the Rules of the court below, quoted above, supplementing section 16 (m) (3) of the Fiduciaries Act of 1917, 20 PS 572, provided for an auction to be conducted by the judge or the clerk of the court on the return day of the petition. That procedure was

followed in this case. The question then is: When did the contract of sale come into existence? "The accepted view of a sale by auction is stated by Williston, Contracts, section 29, Vol. 1, p. 68. 'The auctioneer may more accurately be said to invite offers than himself to be an offeror, and the law has adopted this doctrine. Since the bargain is incomplete until the hammer falls, a bidder may therefore retract his bid until that time. The same point is involved in decisions turning on the right of the auctioneer to withdraw an article offered for sale; and for the same reason, until the hammer falls, the auctioneer may withdraw, unless it has been advertised or announced that the sale shall be without reserve . . .' See Restatement, Contracts, section 27, Vol. 1; Stover v. Rice, 3 Whart. 21; Fisher v. Seltzer, 23 Pa. 308; Stroup v. Raymond, 183 Pa. 279, 38 A. 626; Acker v. Snyder, 250 Pa. 57, 95 A. 325." *Pa. Co. for Insurances on Lives and Granting Annuities v. Broad Street Hospital,* 354 Pa. 123, 127-128. Accordingly, in the words of the opinion filed below, when, "after competitive bidding, the court ordered a private sale to E. J. Carroll and C. A. Waite for $27,850.00, secured by a certified check, whereupon the ancillary executor was directed to make a deed for the property described in the petition," the contract was complete. All the terms had been agreed upon and the contract had been approved by the court. The court's approval of the contract passed the title to the property in the absence of fraud, accident or mistake subject, of course, to the payment of the consideration. Prior to the Act, title did not pass until the delivery of the deed: *Demmy's Appeal,* 43 Pa. 155, 168. After that, the court, consistently with the Act of May 24, 1945, could not set aside the contract merely because appellee made a substantially higher offer.

Another point may be referred to very briefly. The authorities show that it cannot be said that the Act of 1945 is in conflict with section 1 of Article V providing

that "The judicial power of this Commonwealth shall be vested in a Supreme Court, in courts of common pleas, in courts of oyer and terminer and general jail delivery, courts of quarter sessions of the peace, orphans' courts, magistrates' courts, and in such other courts as the General Assembly may from time to time establish." In *Gottschall v. Campbell*, 234 Pa. 347, 83 A. 286, it was held that clause did not prohibit the legislature from taking from the Quarter Sessions and vesting in the County Court power to deal with desertion and non-support. See also *Com. v. Hopkins*, 241 Pa. 213, 88 A. 442; *Com. v. Persch*, 71 Pa. Superior Ct. 60, 63; compare *Com. v. Green*, 58 Pa. 226, 229, et seq.

The decree is reversed; the record is remitted for further proceedings not inconsistent with this opinion; each party to bear his own cost.

---

DISSENTING OPINION BY MR. JUSTICE PATTERSON AND MR. JUSTICE JONES:

We cannot concur with the majority view that the Act of May 24, 1945, P. L. 944, is a constitutional interference with the jurisdiction and powers of orphans' courts.

Before and since the Constitution of 1873 testators and settlors have granted powers of sale relying upon the heretofore unchallenged power of our orphans' courts to see to it that a fair price for estate assets is realized in the interest of beneficiaries, a class composed largely of widows, minor children and persons unborn. If the Act of 1945 is a valid exercise of legislative power, as the majority holds, then the orphans' courts have been rendered impotent to protect their wards in such cases. Under the Act, any agreement made by an incompetent or inexperienced fiduciary with power of sale will be enforceable against the estate, despite gross inadequacy of consideration, except in

the infrequent case where fraud, accident or mistake can be proved. In the present case, where the fiduciary was not acting under a power, application of the Act results in a loss to the beneficiaries of $2,160 and a corresponding gain to the vendee. Had he been acting under a power, the original agreement fixing the purchase price at $25,000 would have bound the estate irrevocably, and the loss to the beneficiaries would have been increased to $5,000. The court would be equally powerless to interfere, in the supposed case of a fiduciary acting under a power, if the original agreement had called for a purchase price of $1,000, with a resulting loss to the estate of $29,000. This Act goes far beyond the suggestion of the concurring Justices in *Kane v. Girard Trust Company,* 351 Pa. 191, 40 A. 2d 466, where they said that,—"In the absence of fraud, accident or mistake, *and when the price is adequate,* we can discover no reason why an honest sale made by a fiduciary should be set aside merely because of a subsequent higher offer" (Emphasis supplied). What this legislative enactment does is to restrict an exercise of judicial power, viz., the power relevantly to adjudicate the value of trust assets whose administration is subject to court jurisdiction and, also, the power to supervise, regulate and control the conduct of fiduciaries into whose care and custody such assets have been committed.

By Art. V, section 1, of the Constitution, the judicial power of the Commonwealth is vested, inter alia, in orphans' courts, and in such other courts as the General Assembly may from time to time establish. Although the courts thus ordained have been, and in the future likely will be, implemented from time to time by the legislature for the purpose of their appropriate efficient and uniform exercise of the judicial power, such courts are, nonetheless, created by and now exist under the Constitution itself. That is necessarily so or otherwise

the legislature could divest the courts of all their powers and thereby in effect abolish our judicial system. But, that, the legislature may not do: *Commonwealth v. Green,* 58 Pa. 226, 229; *Reid v. Smoulter,* 128 Pa. 324, 335, 18 A. 445. The quotation in the majority opinion from *Reid v. Smoulter,* supra, is so peculiarly apposite here as to justify its repetition, at least in part, as follows: "We think it would not have been competent for the legislature, by repeal of this act [of May 19, 1874, setting up separate orphans' courts], to defeat and set aside the constitutional tribunals thus established [Art. V, sec. 22]; for *these courts, although put into actual operation by the legislature, were created by and now exist under the authority of the constitution itself.* Having done what the constitution required, it would not have been in the power of the legislature wholly to undo it. The constitution itself set up this system of . . . Courts, and *it is for the legislature to regulate and maintain, not to destroy it."* (Emphasis supplied).

Of necessity, the legislature has specified and delineated the powers of the courts, including the orphans' courts, and thus has regulated the practice and procedure therein. But the essentials of the constitutionally reposed jurisdiction are fundamental attributes of the courts and beyond the power of the legislature to abridge so long as these constitutional courts are to continue as such. In short, the legislature may deal with the function and powers of the orphans' courts only to the extent necessary to render them adequate for the exercise of the judicial power committed to them by the Constitution. Compare *Penn Anthracite Mining Co. v. Anthracite Miners of Pennsylvania,* 318 Pa. 401, 412, 178 A. 291.

As applied to sales under a testamentary power, the Act of 1945 operates to deprive the orphans' courts of a power exercised by them from early Colonial days,

viz., the power to control and supervise executors and other testamentary fiduciaries. See Act of March 27, 1713, Law Book A, Vol. 2, p. 73. The power to control presupposes a power to review and set aside: *Dundas's Appeal,* 64 Pa. 325, 331; *Orr's Estate,* 283 Pa. 476, 479, 129 A. 565. To say that the orphans' courts possess such power of supervision and control, and at the same time deny to them the right to review, set aside and if necessary order a resale, as this Act expressly does, is to deny the power itself. This legislation strikes at the very vitals of the jurisdiction and power of orphans' courts to control executors and other testamentary trustees, to supervise the sale of real and personal estate of decedents, and to protect the interests of widows, minor children and persons unborn. In a large class of cases it defeats the primary purpose for which the orphans' courts were created and continued by our several constitutions, i.e., "That Care might be taken for those that are not able to take care for themselves": Act of March 10, 1683, *Duke of Yorke's Book of Laws,* p. 131, quoted in *Wimmer's Appeal,* 1 Wharton 96, 102.

If the Act of 1945 were a constitutionally valid exercise of legislative power, we should still be unable to see how a sale by an orphans' court of a decedent's real estate for the payment of his debts could be thought to come within the purview of the Act. Its concern and scope are the conclusiveness and enforceability of fiduciaries' contracts; and no such contract is here involved. The court flatly rejected the only fiduciary contract ever introduced in this proceeding. Nor does it help any to fictionize by saying that the court's acceptance of a higher bid and its direction to the fiduciary to make a deed for the property to the bidder was tantamount to the court's approval of a new contract by the fiduciary. The sale of a decedent's real estate for the payment of his debts has long lain peculiarly and exclusively within

the jurisdiction and power of an orphans' court: See Act of March 10, 1688, *Duke of Yorke's Book of Laws,* p. 180. Even though an exercise of such jurisdiction be invoked on the basis of an antecedent agreement between a fiduciary and a prospective purchaser, action thereafter taken by the court in pursuance of the agreement is "not a sale on the contract but one under the authority of law": *Powers Estate,* 153 Pa. Superior Ct. 161, 165, 33 A. 2d 501. And, the control of *such* a sale ". . . remains in the power of the court until a deed has been executed and delivered": *Demmy's Appeal,* 43 Pa. 155, 168.

The law as above stated appears to have been the rule uniformly followed by the courts of this State at least since the decision in *Demmy's Appeal,* supra, in 1862; and the rule there enunciated was but an interpretation of the statutory definition of the orphans' court powers in such regard under Sec. 19, cl. IV, of the Act of June 16, 1836, which was carried into the Orphans' Court Act of 1917 as Sec. 9, cl. (f). Consequently, when the Act of 1945 is construed so as to embrace a fiduciary's contract for a private sale of a decedent's real estate for the payment of his , debts, yet necessarily subject to due proceedings in an orphans' court, then the Act is additionally unconstitutional in that it works an amendment of extant orphans' court statute law without so forecasting in its title and without specifying the amendment in its body as required, respectively, by Art. III, sections 3 and 6, of the Constitution.

The Act of 1945 further violates the same constitutional provisions last above cited. The law with respect to the power of the orphans' courts over fiduciaries even to the extent of reviewing, setting aside and, if necessary, ordering a resale "of real estate made under a testamentary power" (*Dundas's Appeal,* supra, p. 331) was likewise an interpretation of the statutory definition of

the orphans' court powers in such regard as contained in section 19 of the Act of June 16, 1836, which section 9 of the Orphans' Court Act of 1917 carried forward. The statutory provision as interpreted in *Dundas's Appeal,* supra, became firmly established in our law by later decisions of this Court: *Orr's Estate,* supra; *Mc-Cullough's Estate,* 292 Pa. 177, 140 A. 865; *Kane v. Girard Trust Company,* supra. Yet, in apparent disregard of Art. III, sections 3 and 6, of the Constitution, the Act of 1945 is now judicially accredited as an amendment of cognate prior statute law without so much as a reference in the title of the Act to its amendatory intent or the slightest intimation in the body of the Act of any amendment therein contained.

The majority opinion holds that the authorities show the Act of 1945 is not in conflict with Article V, section 1, citing four decisions. But not one of these cases involved an Act comparable in terms or effect with the legislation now before us. The basic principle of the decisions referred to is that the Constitution having granted to the legislature, by section 1 of Article V, the power to create from time to time courts other than those enumerated, nothing contained in the subsequent sections of that article is sufficient to deprive the legislature of the power to create courts of a different class or grade, and to transfer to the courts so created some of the jurisdiction of the courts enumerated, or vest in them a limited concurrent jurisdiction: *Gerlach v. Moore,* 243 Pa. 603, 609, 90 A. 399. Here neither the power to create "such other courts as the General Assembly may from time to time establish", expressly conferred in the first section of the judiciary article, nor the power to vest some part of the existing judicial powers in "such other courts," is in any way involved.

For the reasons stated, we would declare the Act of 1945 unconstitutional and affirm the decree of the court below.